**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| CYNTHIA R. KANE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2019-0569-PWG |
| | ) | |
| NVR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER REGARDING EXCEPTIONS TO MASTER'S FINAL REPORT**

In 2019, Plaintiff Cynthia R. Kane ("Plaintiff") purchased a home from Defendant NVR, Inc. d/b/a Ryan Homes ("Defendant" or "Ryan Homes"). A few months later, Plaintiff filed this action to rescind the purchase, including cancellation of the deed, alleging that Defendant made intentional misrepresentations about possible mold contamination and committed trespass. Defendant moved to dismiss the complaint pursuant to Court of Chancery Rule 12(b)(1), arguing that the Court of Chancery lacks subject matter jurisdiction over this action because Plaintiff has an adequate remedy at law, and under Rule 12(b)(6), contending that Plaintiff failed to plead sufficient facts to support claims of intentional misrepresentation or trespass.

On February 6, 2020, the Master recommended that the Court deny Defendant's motion to dismiss. The Master concluded that this Court has subject matter jurisdiction over this action and that Plaintiff had stated claims for intentional

misrepresentation and trespass upon which relief can be granted (the "Final Report"). Defendant filed exceptions to the Final Report on February 14, 2020. Plaintiff filed her opposition on March 30, 2020, and Defendant filed its reply on April 15, 2020. On May 5, 2020, the Court held oral argument on Defendant's exceptions to the Final Report.

Upon *de novo* review of the issues raised in Defendant's exceptions to the Master's Final Report, I conclude that this Court has subject matter jurisdiction over this action and that Plaintiff has adequately pleaded claims for intentional misrepresentation and trespass. Therefore, I deny the exceptions to the Master's Final Report.

## I. Factual Background

The facts recited in this order come from Plaintiff's Amended Complaint for Equitable Rescission, Cancellation of Deed to Real Property and Related Relief (the "Amended Complaint" or "AC") and the exhibits attached thereto.[1] All of the well-pleaded facts are accepted as true, and all reasonable inferences are drawn in Plaintiff's favor. The factual recitation is generally limited to those pertinent to deciding the exceptions to the Master's Final Report.

On September 14, 2018, the parties entered into an agreement (the "Purchase Agreement"), whereby Defendant agreed to construct a single family house located

---

[1] Dkt. 6.

in Frankford, Delaware (the "Property" or "House") and to sell the Property to Plaintiff.[2]

During an October 5, 2018 pre-construction meeting involving Plaintiff, her son, and Defendant's agents, there was extensive discussion about the crawl space design of the House.[3] The Amended Complaint alleges Plaintiff's son explained that "a crawl space free of mold was essential because he had experienced a previous mold exposure which resulted in severe illness and extensive losses."[4]

At the October 5, 2018 pre-construction meeting, Defendant's agents, one of whom was the project manager, made affirmative representations to Plaintiff and her son that the design of the crawl space would keep it dry and free of any moisture or mold problems.[5] They also assured Plaintiff and her son that the design of the crawl space guaranteed a climate-controlled environment and that there was no chance of any crawl space contaminants entering the living area.[6]

At the pre-settlement inspection on January 18, 2019, attended by Plaintiff, her son, and the project manager, Plaintiff's son noticed water around the foundation and expressed concern over moisture and mold.[7] Plaintiff's son recounted his prior

---

[2] *Id.* ¶ 4, Ex. A (Delaware Purchase Agreement).
[3] *Id.* ¶ 6. The Amended Complaint identifies Defendant's agents by name.
[4] AC ¶ 6.
[5] *Id.* ¶ 7.
[6] *Id.*
[7] *Id.* ¶ 9.

incident with mold exposure and explained that "Plaintiff could not risk experiencing any such problems because she has significant breathing problems and asthma."[8] The project manager re-explained the crawl space design and assured Plaintiff's son that the foundation of the Property would remain dry and not permit any mold.[9] A second conversation about Plaintiff's breathing problems and asthma took place inside the House on that same day.[10] Prior to final settlement, Defendant delivered to Plaintiff a written disclosure report.[11] In that report, Defendant answered "No" to the question: "Are you aware of anything else you should disclose to a prospective Buyer because it may materially and adversely affect the property?"[12] Later that same day, the parties settled the Property, and Defendant delivered the Property's deed to Plaintiff.[13]

On January 29, 2019, Plaintiff discovered two workers in the crawl space wearing hazmat suits and respirators.[14] The workers were removing insulation from

---

[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.* ¶ 11, Ex. B (State of Delaware Seller's Disclosure of Real Property Condition Report New Construction Only).
[12] *Id.*
[13] *Id.* ¶ 12, Ex. C (Deed dated Jan. 18, 2019).
[14] AC ¶¶ 17–18.

between the floor joists.[15]  Plaintiff alleges that the workers told her the House had tested positive for mold and they had been hired by Defendant to remediate it.[16]

Plaintiff returned to the House and placed a call to the project manager.[17] While awaiting the project manager's return call, Plaintiff noticed a strong chemical-like smell, which triggered her asthma and caused shortness of breath, eye swelling, burning eyes and throat, and itchiness to her face, forcing her to leave the House.[18] Plaintiff returned about two hours later to find the remediation workers spraying the underside of the House.[19]  When she confronted the workers, Plaintiff was told they were spraying a chemical by the name of Microban.[20]

Later that day, the project manager returned Plaintiff's call and said that "due to increased rainfall, a few houses in the development tested positive for mold and he had the mold remediation company check Plaintiff's house while they were in the neighborhood and that it too had tested positive for mold."[21]

At no time prior to discovering the mold remediation workers on January 29, 2019 was Plaintiff aware of any mold contamination in the Property, nor did Plaintiff consent to having the Defendant's mold remediation workers enter her Property and

---

[15] *Id.* ¶ 18.
[16] *Id.* ¶ 19.
[17] *Id.* ¶ 20.
[18] *Id.* ¶ 21.
[19] *Id.* ¶ 22.
[20] *Id.*
[21] *Id.* ¶ 24.

spray Microban on it.[22]   In the weeks following Defendant's mold remediation measures, Plaintiff was unable to stay in her House for more than a few minutes at a time without difficulty breathing due to her asthma and allergic reactions.[23] Plaintiff's pulmonologist has recommended that Plaintiff not live in the House.[24]

According to Plaintiff, air quality testing conducted inside the House on February 20, 2019 disclosed the presence of elevated levels of volatile organic compounds ("VOCs") higher than environmentally acceptable; testing on July 29, 2019 showed levels of VOCs acceptable to an average person, but which would act as respiratory irritants to a person with Kane's sensitivities; and air quality and surface testing on September 16, 2019 disclosed elevated levels of mold in the kitchen and crawl space requiring remediation.[25]

On July 23, 2019, Kane filed a complaint for equitable rescission of the Purchase Agreement and for cancellation of the deed.[26]  On October 2, 2019, Kane filed the Amended Complaint, which alleges that, at the time of purchase, Defendant knew of, and fraudulently concealed from her, the existence of possible or actual mold contamination in the House.[27]   Plaintiff also claims that Ryan Homes

---

[22] *Id.* ¶¶ 26–27.
[23] *See id.* ¶ 29.
[24] *Id.* ¶ 32.
[25] *Id.* ¶¶ 30–31.
[26] Compl. for Equitable Rescission, Cancellation of Deed to Real Property and Related Relief (Dkt. 1).
[27] AC ¶¶ 38–40.

6

committed trespass by causing the remediation workers to enter onto the Property after settlement to inspect for mold contamination and perform mold remediation work without her knowledge or consent, resulting in high levels of VOCs in the House.[28] Plaintiff alleges that she has suffered damages, including among other things, the purchase price of the Property, settlement and interest expenses, diminution in the value of the Property, maintenance costs, as well as the costs for substitute housing, because she is unable to reside in the House due to the contamination and that the House is effectively unmarketable for sale.[29]

On October 31, 2019, Defendant filed a motion to dismiss the action under Court of Chancery Rule 12(b)(1), arguing that this Court lacks subject matter over the action because Plaintiff has an adequate remedy at law for monetary damages based upon breach of contract.[30] Defendant also moved to dismiss under Court of Chancery Rule 12(b)(6), arguing that the Amended Complaint does not adequately plead claims for intentional misrepresentation and trespass.[31]

Based on the facts as alleged in the Amended Complaint, the Master recommended that the Court deny Defendant's motion to dismiss, having concluded that this Court has subject matter jurisdiction over this action and that Plaintiff has

---

[28] *See id.* ¶¶ 30, 46.
[29] *Id.* ¶¶ 32, 34–36.
[30] Def.'s Opening Br. in Supp. of Mot. to Dismiss 7–12 (Dkt. 7).
[31] *Id.* 13–18.

pleaded claims for intentional misrepresentation and trespass upon which relief can be granted.[32]

Defendant's Notice of Exceptions to the Master's Final Report asserts exceptions to the Master's following findings:

1. Plaintiff cannot obtain an adequate legal remedy in Superior Court that would be full, fair, and complete.

2. Plaintiff has sufficiently pleaded a claim of intentional misrepresentation, or fraudulent concealment.

3. Plaintiff has met the standard of Court of Chancery Rule 9 when pleading her claim of intentional misrepresentation.

4. Plaintiff has sufficiently pleaded facts to prove a claim of trespass.[33]

## II.    Analysis

The standard of review for a Master's findings, both as to law and fact, is *de novo*. *DiGiacobbe v. Sestak*, 743 A.2d 180, 184 (Del. 1999).

### A.    This Court has subject matter jurisdiction over the action.

The Court of Chancery is court of limited jurisdiction.  Subject matter jurisdiction exists in this Court "if:  (1) one or more of the plaintiff's claims for relief is equitable in character, (2) the plaintiff requests relief that is equitable in nature, or

---

[32] Final Report (Dkt. 15).

[33] Def.'s Notice of Exceptions to Master's Final Report (Dkt. 16).

8

(3) subject matter jurisdiction is conferred by statute." *Candlewood Timber Grp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004) (citations omitted). If a "sufficient remedy may be had by common law, or statute, before any other court or jurisdiction of this State," the Court of Chancery has no jurisdiction. 10 *Del. C.* § 342; *see also Yu v. GSM Nation, LLC*, 2017 WL 2889515, at \*3 (Del. Ch. July 7, 2017) (same).

To be an adequate remedy at law, the remedy must "afford the plaintiff full, fair, and complete relief." *El Paso Nat. Gas Co. v. Transamerican Nat. Gas Corp.*, 669 A.2d 36, 39 (Del. 1995). Defendant argues that Plaintiff has an adequate remedy at law in the form of money damages because Plaintiff's claim against Defendant "is really for breach [of] the contract and there is no need for equitable relief."[34]

The Master recommended that the Court deny the motion to dismiss under Rule 12(b)(1) because there is not sufficient evidence that the Superior Court can afford Plaintiff complete relief if her claims are ultimately proven.[35] Specifically, Plaintiff seeks to cancel the deed transferring the Property to her,[36] which would

---

[34] Def.'s Opening Br. 12 (Dkt. 20).

[35] Final Report 9. Plaintiff will have an uphill battle to prove her claim for equitable rescission. "[R]escission is a remedy rarely granted, as it results in the abrogation or 'unmaking' of an agreement, and attempts to return the parties to the status quo. . . . The [C]ourt must feel a high degree of confidence in order to employ this extreme remedy." *Liberto v. Bensinger*, 1999 WL 1313662, at \*5 (Del. Ch. Dec. 28, 1999) (internal punctuation and citations omitted); *see also Williams v. White Oak Builders, Inc.*, 2006 WL 1668348, at \*5 (Del. Ch. June 6, 2006) (same), *aff'd*, 913 A.2d 571 (Del. 2006).

[36] AC, Prayer for Relief (b).

reestablish title to the Defendant[37] and affect the mortgage on the Property.[38] Because Plaintiff seeks to restore the Property back to Defendant, equitable rescission is the appropriate remedy in this action if Plaintiff prevails on her claim.

"[T]he remedy of equitable rescission typically requires that the court cause an instrument, document, obligation or other matter affecting plaintiff's rights and/or liabilities to be set aside and annulled, thus restoring plaintiff to [her] original position and reestablishing title or recovering possession of property." *E.I. Du Pont De Nemours & Co. v. HEM Research, Inc.*, 1989 WL 122053, at \*3 (Del. Ch. Oct. 13, 1989); *see* Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 16.04[a], at 16-62 (2d ed. 2019) ("[E]quitable relief may also be required where the unwinding of a transaction calls for the restoration of unique, specific property from one party to another."). An award of money damages alone is inadequate here because without the cancellation of the deed, Plaintiff may still have continuing obligations relating to property taxes or the mortgage. *See Creative Research Mfg. v. Advanced Bio-Delivery LLC*, 2007 WL 286735, at \*8 (Del. Ch. Jan. 30, 2007) ("Equitable

---

[37] *Id.*, Ex. C (Deed dated Jan. 18, 2019).

[38] *Id.*, Ex. A (Delaware Purchase Agreement) (showing that Plaintiff encumbered the Property with a mortgage from Defendant's affiliated company, NVR Mortgage Finance, Inc.).

rescission also requires putting each party in as close to the position they would have been in but for the creation of the contract.").

Counsel for Defendant conceded at oral argument that the Superior Court lacks authority to cancel Plaintiff's deed,[39] which is relief that Plaintiff has specifically requested.[40] Cancellation of a deed lies "within the exclusive realm of Chancery's jurisdiction." *Davenport Servs., Inc. v. Five N. Corp.*, 2003 WL 21739066, at \*4 (Del. Super. May 19, 2003) (Slights, J.). "Because Plaintiff requests equitable rescission, rather than rescission at law, . . . the Superior Court does not have jurisdiction over such an equitable remedy." *Schlosser & Dennis, LLC v. Traders Alley, LLC*, 2017 WL 2894845, at \*7 (Del. Super. July 6, 2017) (dismissing the breach of contract claim in Superior Court to allow it to move forward in the Court of Chancery because the plaintiff sought equitable rescission even though the plaintiff conceded that it may ultimately avail itself of money damages as part of the package for "complete and final relief").

Because the Superior Court cannot provide Plaintiff with "full, fair, and complete relief," the Master properly determined that this Court has subject matter jurisdiction over the action.

---

[39] Oral Arg. Tr. 46.
[40] AC, Prayer for Relief (b).

## B.    Plaintiff has alleged a claim of intentional misrepresentation.

The standard governing a motion to dismiss under Court of Chancery Rule 12(b)(6) for failure to state a claim for relief is well settled:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and ([iv]) dismissal is inappropriate unless the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible to proof."

*Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (internal citations omitted).

A claim of intentional misrepresentation requires proof of the following elements:  (1) deliberate concealment by the defendant of a material past or present fact, or silence in the face of a duty to speak; (2) that the defendant acted with scienter; (3) an intent to induce plaintiff's reliance upon the concealment; (4) causation; and (5) damages resulting from the concealment. *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149 (Del. 1987).

A claim for intentional misrepresentation is also subject to Court of Chancery Rule 9(b) and must be pleaded with particularity.  *Metro. Life Ins. Co. v. Tremont Grp. Holdings, Inc.*, 2012 WL 6632681, at *16 (Del. Ch. Dec. 20, 2012) (applying Rule 9(b) to the intentional misrepresentation claim); Ct. Ch. R. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.").  A pleading satisfies the particularity requirement

12

under Rule 9(b) if it informs the parties of the precise transactions at issue and the fraud alleged to have occurred in those transactions, so as to place the parties on notice of the precise misconduct with which they are charged. *Kahn Bros. & Co., Inc. Profit Sharing Plan & Tr. v. Fischbach Corp.*, 1989 WL 109406, at *4 (Del. Ch. Sept. 19, 1989); *see also ABRY P'rs V, L.P. v. F & W Acq. LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006) ("Essentially, the plaintiff is required to allege the circumstances of the fraud with detail sufficient to apprise the defendant of the basis for the claim."). A claimant can satisfy Rule 9(b) by alleging "(1) the time, place, and contents of the false representation; (2) the identity of the person making the representation; and (3) what the person intended to gain by making the representations." *ABRY*, 891 A.2d at 1050.

Plaintiff alleges that "[a]t the time of final settlement on January 18, 2019, Defendant was aware of evidence of possible or actual fungal or mold contamination in or under the house in need of remediation, but Defendant failed to disclose that to Plaintiff. Defendant thereby fraudulently concealed from Plaintiff that the Property required further inspection and evaluation and possible chemical remediation for fungal or mold contamination."[41] Plaintiff points to specific representations made by specific individuals on October 5, 2018 and January 18, 2019, as well as the

---

[41] AC ¶¶ 38–39.

13

seller's written disclosure report.[42]  Plaintiff alleges that "had she known of a need to remediate possible fungal or mold contamination, she would not have gone to final settlement and purchased the property."[43]

Defendant's brief asserts that Plaintiff has not alleged the essential elements of deliberate action, scienter, and intent to induce reliance to state a claim for intentional misrepresentation.[44]  Defendant does not argue that the Defendant's alleged representations on October 5, 2018 and January 18, 2019 concerning the crawl space design or seller's written disclosure report were not intended to induce Plaintiff to purchase the property or that Plaintiff was not induced to do so.  Instead, Defendant's argument is grounded on the proposition that Plaintiff cannot connect the Defendant's statements or post-closing discovery of mold to any knowledge that the crawl space had mold contamination on the date of settlement.  Specifically, Defendant argues that Plaintiff fails to:  (1) present facts that there was a fungal or mold contamination at the time of settlement; (2) present facts indicating that Defendant knew of the mold or fungal contamination and purposefully or negligently failed to represent it; (3) connect the mold and fungal contamination at

---

[42] *Id.* ¶¶ 7, 9, 11; Ex. B (State of Delaware Seller's Disclosure of Real Property Condition Report New Construction Only).
[43] AC ¶ 14.
[44] Def.'s Opening Br. 15.

settlement with the remediation work done 11 days later.[45]

I find that the Amended Complaint's allegations of Defendant's misrepresentations on October 5, 2018 and January 18, 2019, along with the written disclosure report satisfy Rule 9(b) as to time, place, and contents of the misrepresentations. It is reasonably inferable from the allegations that Defendant's representations about the crawl space design and that the crawl space would be free of mold were intended to and did induce Plaintiff to purchase the Property. The Amended Complaint also alleges well-pleaded facts from which it is reasonable to infer that there was possible mold contamination in the Property at the time of the pre-settlement inspection of which Defendant was aware when its representative assured Plaintiff that the foundation of the Property would remain dry and not permit any mold.[46]

Court of Chancery Rule 9(b) specifically provides that knowledge and intent may be averred generally. Ct. Ch. R. 9(b). There is no dispute that Defendant knew that mold existed in the House no later than the date that the remediation workers arrived 11 days after settlement.[47] The remediation team had been dispatched

---

[45] Def.'s Reply Br. 7–8 (Dkt. 24); *see also* Def.'s Opening Br. 15–16. Defendant also argues that, if the mold had been later remediated, then Ryan Homes could not have concealed its earlier existence on the Property. Def.'s Opening Br. 16. This is a *non sequitur*. Furthermore, Plaintiff alleges the remediation was only a "temporary fix." AC ¶ 22.

[46] AC ¶ 9.

[47] *Id.* ¶ 19; Def.'s Reply Br. 9.

15

because Defendant had determined that the Property tested positive for mold.[48] Presumably, the Property had been tested prior to the remediation team's arrival, but the details of when the test occurred and its results became known are not alleged. That, of course, is understandable, because Defendant ordered the test. Thus, the circumstances surrounding the test, including when and why it was ordered, are within Defendant's knowledge, not Plaintiff's.

The temporal proximity of only 11 days between the project manager's assurances that the Property would not permit mold and the arrival of mold remediation workers to perform mold remediation at Defendant's direction in response to a positive mold test are sufficient for the Court to infer that: (1) there was a fungal or mold contamination in the Property, or the likelihood of fungal or mold contamination, at the time of the parties' pre-settlement inspection on January 18, 2019; (2) Defendant was aware of the actual or the likelihood of fungal or mold contamination at the time of the pre-settlement inspection; and (3) the mold remediation efforts conducted 11 days later by Defendant's agents were likely related to the same actual or likelihood of fungal or mold contamination from the time of the pre-settlement inspection. There may be a factual dispute about when exactly the mold appeared in the Property's crawl space, when Defendants had actual knowledge of the mold, or whether the crawl space design would not prevent

---

[48] *Id.*

16

mold as Defendant had represented, but those facts lie more in the knowledge of Defendant than with Plaintiff. Plaintiff is entitled to discovery on these issues based on her well-pleaded allegations. *See H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 146 (Del. Ch. 2003) (noting that courts have recognized that the particularity requirement of Rule 9 must be applied in light of the facts of the case, and less particularity is required when the facts lie more in the knowledge of the opposing party than of the pleading party).

The Master thus correctly determined that the Amended Complaint stated a claim for intentional misrepresentation.

### C. Plaintiff has stated a claim for trespass.

Defendant argues that Plaintiff has failed to plead damages to sustain her claim for trespass.[49] "Trespass is a strict liability offense, the elements of which are the entry onto real property without the permission of the owner." *Fairthorne Maint. Corp. v. Ramunno*, 2007 WL 2214318, at *5 (Del. Ch. July 20, 2007) (quoting *Beckrich Hldgs., LLC v. Bishop*, 2005 WL 1413305, at *9 (Del. Ch. June 9, 2005)); *accord Robinson v. Oakwood Vill., LLC*, 2017 WL 1548549, at *15 (Del. Ch. Apr. 28, 2017); *Gordon v. Nat'l R.R. Passenger Corp.*, 2002 WL 550472, at *4 (Del. Ch. Apr. 5, 2002) (Master's Report, Glasscock, M.).

---

[49] Def.'s Opening Br. 17.

17

Defendant's brief and the Master's Final Report cite to *Williams v. Manning*, 2009 WL 960670, at \*8 (Del. Super. Mar. 13, 2009), as the standard for pleading a claim of trespass.[50] *Williams* includes a third element: "the plaintiff must show damages." *Williams*, 2009 WL 960670, at \*8. *Williams* is a post-trial opinion addressing the calculation of damages awarded by a jury. Indeed, the jury instructions in *Williams* explained that nominal damages may be appropriate for trespass. *Id.* ("If you do not award damages for the above but find the Mannings' conduct constitutes a trespass but the Williams suffered no injury or damage to justify compensation, as an alternative the Williams may recover nominal damages, usually in the amount of $1.00.").

*Williams* did not address the standard governing a motion to dismiss a claim for trespass. Delaware cases addressing the elements of trespass recognize that damages are implied. "Any unlawful entry upon another's land constitutes a trespass, and the law implies damages for such a trespass, but the amount depends on the damage actually done." *Cochran v. City of Wilmington*, 77 A. 963, 963–64 (Del. Super. 1909); *accord Kuhns v. Bruce A. Hiler Delaware QPRT*, 2014 WL 1292860, at \*19 (Del. Ch. Mar. 31, 2014), *aff'd sub nom. Hiler v. Kuhns*, 116 A.3d 1243 (Del. 2015); *O'Bier v. JBS Constr., LLC*, 2012 WL 1495330, at \*2 (Del. Super. Apr. 20, 2012) (Vaughn, J.); *see Gordon*, 2002 WL 550472, at \*4 ("[W]hether the

---

[50] Final Report 13 n.22; Def.'s Opening Br. 17; Pl.'s Ans. Br. 26 (Dkt. 22).

plaintiffs' property was previously contaminated . . . may be highly relevant in the damages phase, but because damages are not an element of the tort of trespass, I need not decide at this juncture what the state of underlying contamination of the property may have been."); *see also* RESTATEMENT (SECOND) OF TORTS § 163 (1965) ("The wrong [of trespass] . . . consists of an interference with the possessor's interest in excluding others from the land. Consequently, even a harmless entry or remaining, if intentional, is a trespass."); 75 AM.JUR.2D *Trespass* § 112 (2009) ("[I]n the absence of proven or actual damages, plaintiffs are entitled to nominal damages in an action for trespass." (citations omitted)).

Although Plaintiff is not required to plead damages for trespass, I nonetheless conclude that Plaintiff has done so here. Damages can be pleaded generally. *See Bamford v. Penfold, L.P.*, 2020 WL 967942, at *21 (Del. Ch. Feb. 28, 2020). "Proof of . . . damages and of their certainty need not be offered in the complaint in order to state a claim." *Anglo Am. Sec. Fund, L.P. v. S.R. Glob. Int'l Fund, L.P.*, 829 A.2d 143, 156 (Del. Ch. 2003). "Generally, in Delaware, the measure of damages for trespass of land is the difference between the value of the land before the trespass occurred and the value of the land after the trespass." *Farny v. Bestfield Bldrs., Inc.*, 391 A.2d 212, 213 (Del. Super. 1978).

The Amended Complaint alleges that Plaintiff was unable to reside in the Property due to the presence of VOCs, which were first detected not long after the

19

mold remediation workers entered Plaintiff's property without authorization and sprayed Microban in the crawl space.[51]  Plaintiff also alleges that the Property's history of VOCs negatively affects the fair market value of her Property.[52]  This is sufficient to plead damages under Court of Chancery Rule 8.

Having conducted a *de novo* review of the issues raised in the exceptions to the Master's Final Report, I conclude that the Master's Final Report should be approved.  Accordingly, Defendant's exceptions to the Master's Final Report are hereby denied, and the Master's Final Report is approved.

IT IS SO ORDERED.

*/s/ Paul A. Fioravanti, Jr.*
Vice Chancellor

Dated:  June 5, 2020

---

[51] AC ¶¶ 32, 44.  Plaintiff may also be entitled to damages stemming from the temporal loss and enjoyment of her property resulting from Defendant's trespass.  *See Robinson*, 2017 WL 1548549, at *16 (Del. Ch. Apr. 28, 2017).
[52] AC ¶ 34.